1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST
REBECCA A. PETERSON (241858)
100 Washington Avenue South, Site 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com

Attorneys for Plaintiff
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

HYDE-EDWARDS SALON & SPA,
Individually and on Behalf of All
Others Similarly Situated,

                    Plaintiff,

        v.

JPMORGAN CHASE & CO. and
JPMORGAN CHASE BANK, N.A.,

                    Defendants.

) Case No.  **'20 CV0762 DMS MDD**
)
) **CLASS ACTION COMPLAINT**
) **FOR:**
)
) DEMAND FOR JURY TRIAL
)
)
) 1) California False Advertising Law,
)    California Business & Professions
)    Code §§17500, et seq.;
) 2) Unfair Competition Law, California
)    Business & Professions Code
)    §§17200, et seq.;
) 3) Fraudulent Concealment;
) 4) Breach of Fiduciary Duty; and
) 5) Negligence

**NATURE OF THE ACTION**

1.     Plaintiff Hyde-Edwards Salon and Spa ("Plaintiff"), individually and on behalf of all others similarly situated, by and through its undersigned attorneys, brings this Class Action Complaint and jury demand against Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("Defendants"), for their unlawful acts and/or intentional practices of making false, misleading, and deceptive representations and omissions concerning their processing of economic assistance via the Federal Paycheck Protection Program ("PPP"), by engaging in conduct prohibited by law and regulations with customers and clients, and by otherwise engaging in sharp business practices.

2.     Defendants made false, misleading, and deceptive material statements and omissions to consumers and small business owners who were in need of financial relief and assistance as a result of the COVID-19 pandemic that they would administer, process, and grant loans in accordance with applicable Small Business Administration regulations.

3.     Specifically, Defendants knew that all loans through the PPP were vital to Plaintiff and the Class members and critically time-sensitive given that the total amount of PPP funds were limited and the amount Defendants could loan pursuant to the PPP was capped. Defendants, as an approved lender agreed to comply with all applicable rules, requirements and guidelines.[1] Defendants, however, intentionally ignored the equitable and critical guideline that loans would be processed on a "first come, first served" basis as required by the PPP. Instead, in order to protect their financial gains, Defendants prioritized the processing of larger loans over smaller loans and loans for which Defendants risked greater exposure in the event of a business failure over loans where the risk exposure was less.   For instance,

---

[1] https://www.sba.gov/sites/default/files/2020-04/PPP--Agreement-for-New-Lenders-Banks-Credit-Unions-FCS-w-seal-fillable.pdf

Defendants prioritized processing the loans for large restaurant chains such as Ruth's Chris Steakhouse (approved $20 million on April 7), Shake Shack ($10 million), Potbelly Sandwich Shop (approved $10 million on April 6), and Texas Taco Cabana (approved $10 million on April 8).[2]

4.      Defendants not only decided to line their own pockets at the expense of Plaintiff and the Class members, they affirmatively chose to not disclose to any small business owner that they were prioritizing larger business loans and not following the PPP's official guidelines of "first come, first served."  This was further wrongdoing as Plaintiff and the Class members could have decided to apply for the PPP assistance through another financial institution. Defendants' material misrepresentations and omissions ensured that there was no arms-length transaction between Plaintiff and the Class Members and otherwise violated the Small Business Administration's ("SBA") regulatory code of ethics.

5.      Moreover, no reasonable consumer would have expected Defendants to prioritize the larger businesses in contradiction to the PPP guidelines and rules.

6.       Defendants' misrepresentations, omissions and wrongdoing caused substantial injury to small businesses such as Plaintiff and the Class members who were thus unable to benefit from the economic assistance.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over all causes of action under the Class Action Fairness Act of 2005 and 28 U.S.C. §1332, pursuant to which this Court has diversity jurisdiction because Plaintiff and the Class members are citizens of states different than Defendants and because the amount in controversy exceeds the sum or value of $5,000,000.

---

[2] Since receiving the $10 million loan, Shake Shack has announced that it will return the entire amount of the loan. (https://www.businessinsider.com/ruths-chris-potbelly-chains-tk-million-in-small-business-loans-2020-4) (last accessed April 22, 2020)

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because Plaintiff is located in and suffered injury as a result of Defendants' act in this District, a substantial part of the acts or transactions giving rise to the claims occurred in this District, Defendants conduct substantial business in this District, Defendants have intentionally availed themselves of the laws and markets of this District, and Defendants are subject to personal jurisdiction in this District.

**PARTIES**

9.      Plaintiff is, and at all times relevant hereto has been, a limited liability company with its principal place of business in San Diego, California.  Founded in 2007, Plaintiff is a full service salon and spa, offering hair and makeup services, as well as manicures, pedicures, facials, chemical peels, and waxing, and employs 23 individuals

10.     Plaintiff, like other reasonable small business owners, saw and reasonably relied upon Defendants' false, misleading, and deceptive misrepresentations and omissions alleged herein, when making its decision to apply for loan assistance through the PPP.

11.     Plaintiff was unaware of Defendants' misleading and deceptive misrepresentations and omissions regarding its administration and handling of the loan assistance through the PPP.

12.     Defendant JPMorgan Chase Bank, N.A. ("Defendant Chase Bank") is headquartered in Columbus, Ohio.  Defendant Chase Bank conducts substantial business in California by maintaining physical locations within this District, serving customers, including small business owners, within this District, and marketing and advertising its services within this District.  Defendant Chase Bank is a wholly-owned subsidiary of JPMorgan Chase & Co.

13.     Defendant JPMorgan Chase & Co. ("Defendant Chase") is headquartered in New York, New York.  It is a multinational financial services

institution that provides investment, commercial, and private banking; asset management; and credit card services.

### FACTUAL ALLEGATIONS

14.     As a result of the rapidly increasing number of cases and countries affected by COVID-19, on March 11, 2020, the World Health Organization's ("WHO") Director-General declared COVID-19 as a pandemic.

15.     In response to the rapid spread of COVID-19 throughout California, on March 19, 2020, California's Governor Gavin Newsom issued Executive Order N-33-20 ("Order"), which ordered California residents to stay at home.

16.     The Order allowed certain "essential services" to remain open, including banks, gas stations, pharmacies, grocery stores, and state and local government functions.

17.     However, the Order closed dine-in restaurants, entertainment venues, public events and gatherings, and hair and nail salons.

18.     On March 27, 2020, President Trump signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act into law, including the provision of $376 billion in economic assistance to small businesses.

19.     The CARES Act was intended to provide direct economic assistance to workers and *businesses on a first come, first served basis*, and to preserve U.S. jobs.

20.     The CARES Act created certain economic programs designed to provide financial assistance to small business owners, including the PPP.

21.     The PPP was designed to help small business owners cover the costs associated with retaining their employees during the COVID-19 pandemic by providing 100% federally guaranteed loans.   Additionally, the loans may be forgiven, they carry no SBA fees, and loan repayment can be deferred for six months.

22.     Small businesses are eligible to apply for a loan through the PPP if they have been harmed by the COVID-19 pandemic between February 15, 2020 and June

30, 2020.  Loans are retroactive to February 15, 2020, in order to provide assistance to workers who were already laid off.

23.    While the loans were guaranteed by the federal government, small business owners need to apply for such loans through private banks.

24.    Because each loan will be registered under a Taxpayer Identification Number, small business owners could only apply once for a loan through the PPP so if a bank was unwilling or did not treat each business on a first come, first served basis, an applicant was left with little recourse.

25.    According to the U.S. Small Business Administration Office of Advocacy, in 2018, the country had 30.2 million small businesses, representing 99.9% of all U.S. businesses and 47.5% of all employees in the U.S.[3]

26.    Of the 30.2 million small businesses in the U.S., 22 million are individually operated, with no employees other than the owner.[4]

27.    In 2018, the average loan amount backed by the SBA was $107,000.[5]

28.    Beginning on April 3, 2020, small businesses and sole proprietorships could apply for and receive loans through the PPP.  Beginning on April 10, 2020, independent contractors and self-employed individuals could apply for and receive such loans.  The last day to apply for and receive a loan through the PPP is June 30, 2020.

29.    Loans through the PPP were time-sensitive as they were to be administered on a "first-come, first-served" basis.  Consequently, loans should have

---

[3]    https://www.sba.gov/sites/default/files/advocacy/2018-Small-Business-Profiles-US.pdf (last accessed April 21, 2020)

[4]    https://www.chamberofcommerce.org/small-business-statistics/ (last accessed April 21, 2020)

[5]    https://www.valuepenguin.com/average-small-business-loan-amount (last accessed April 21, 2020)

been considered by banks in the order in which they were received, rendering the loan amount insignificant.[6]

30.     Lenders of PPP loans earned varying percentages of origination fees, based on the loan amount: five percent on loans not more than $350,000; three percent on loans more than $350,000 but less than $2,000,000; and one percent on loans more than $2,000,000.[7]

31.     Despite the first come, first served mandate and because of the tiered percentage-based origination fees, lenders were financially incentivized to approve of larger loans ahead of smaller ones: one percent fees on a $5,000,000 loan would earn a bank $50,000 while five percent on a $350,000 loan would earn $17,500.

32.     The SBA tracked the numbers of approved loans and dollars for both the first 10 days of the PPP (April 3-13, first chart) and through the last 3 days (through April 16, second chart).[8]

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 725,058 | $37,178,984,187 | 70.05% | 15.02% |
| >$150K - $350K | 156,590 | $35,735,615,983 | 15.13% | 14.44% |
| >$350K - $1M | 102,473 | $59,291,602,643 | 9.90% | 23.95% |
| >$1M - $2M | 31,176 | $43,278,883,532 | 3.01% | 17.48% |
| >$2M - $5M | 16,516 | $49,288,997,593 | 1.60% | 19.91% |
| >$5M | 3,273 | $22,769,309,582 | 0.32% | 9.20% |

• Overall average loan size is $239,152.

---

[6] SMALL BUSINESS ADMINISTRATION Interim Final Rule §m [Docket No. SBA-2020-0015] 13 CFR Part 120 Business Loan Program Temporary Changes; Paycheck Protection Program RIN 3245-AH34.

[7] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf (last accessed April 22, 2020)

[8] https://www.sba.gov/sites/default/files/2020-04/PPP%20Report%20SBA%204.14.20%20%20-%20%20Read-Only.pdf and https://www.sba.gov/sites/default/files/2020-04/PPP%20Deck%20copy.pdf (last accessed April 22, 2020)

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 1,229,893 | $58,321,791,761 | 74.03% | 17.04% |
| >$150K - $350K | 224,061 | $50,926,354,675 | 13.49% | 14.88% |
| >$350K - $1M | 140,197 | $80,628,410,796 | 8.44% | 23.56% |
| >$1M - $2M | 41,238 | $57,187,983,464 | 2.48% | 16.71% |
| >$2M - $5M | 21,566 | $64,315,474,825 | 1.30% | 18.79% |
| >$5M | 4,412 | $30,897,983,582 | 0.27% | 9.03% |

- Overall average loan size is $206K.

33.    Not only was the overall average loan size greater during the first ten days of the PPP (see charts above: $239,152 vs. $206,000), but the number of approved loans for applications under $350,000 was significantly greater in the last three days before PPP funds ran out when compared to the first ten days: 881,648 approved loans in the first ten days versus 1,453,954 approved loans as of the last day PPP funds were available.  In the period between April 14 through April 16, 572,306 more loans were approved, representing a 65% increase over those approved during the first ten days.

34.    That 65% increase is even more telling when compared with the difference in approved loans for applications above $2,000,000 for the same period. In the first ten days, 19,789 loans were approved versus 25,978 loans approved as of the last day PPP funds were available, meaning that between April 14-16, 6,189 loans were approved, equaling a 31% increase over those approved during the first ten days.

35.    With such varying data, it's clear that lenders such as Defendants did not process loans on a "first come, first served" basis as required by the PPP, but that the loan amount and possible loan failure exposure to the Defendants influenced when the application was processed by the Bank and submitted for approval.

36.    For example, Defendants quickly approved four loans equaling $50 million in loans to large restaurant chains Ruth's Chris Steakhouse (approved $20

- 7 -

million on April 7), Shake Shack ($10 million), Potbelly Sandwich Shop (approved $10 million on April 6), and Texas Taco Cabana (approved $10 million on April 8).[9]

37.     Plaintiff learned of the CARES Act and PPP when it was passed and signed into law by President Trump.

38.     On approximately March 17, 2020, Plaintiff's business closed in accordance with San Diego County's Shelter in Place Order.

39.     On approximately April 8, 2020, Plaintiff submitted an application for loan assistance through the PPP with Defendants.  Plaintiff applied for a loan through the PPP in order to keep employees on the payroll, as well as to pay rent and other approved expenses.  Plaintiff chose to submit a loan application with Defendants because it conducts all business banking with them.

40.     On that same day, Plaintiff received an e-mail communication from Defendants acknowledging receipt of its loan application.

41.     On April 19, 2020, Plaintiff received an e-mail communication stating its application was in Stage 2 of the review process, but that PPP funds were no longer available.  There has been no further communication from Defendants about the status of Plaintiff's loan application.

42.     Because Plaintiff submitted an application for a loan through the PPP with Defendants, it was denied access to funds that would have helped it survive the Stay at Home Order and resulting business closure and economic crisis and was prevented from seeking assistance from a different lender.

43.     Defendants claim they worked tirelessly to ensure as many clients received PPP funds as possible, and that loan applications were processed and approved "in the same general order" in which they received the initial online form.[10]

---

[9] Since receiving the $10 million loan, Shake Shack has announced that it will return the entire amount of the loan. (https://www.businessinsider.com/ruths-chris-potbelly-chains-tk-million-in-small-business-loans-2020-4) (last accessed April 22, 2020)

[10] https://recovery.chase.com/cares1 (last accessed April 22, 2020)

44.     However, Defendants misled and deceived their clients, including Plaintiff, into believing applications for loans through the PPP were processed in the order received with no regard to loan amount, when in fact the loan amount certainly influenced the order in which loans were processed and approved.

45.     If Defendants had not misled and deceived their small business clients, such clients could have submitted their applications for loans through the PPP with other lenders that were following the required "first come, first served" application processing order.   Because small businesses were only allowed to submit one application for PPP loans, they could not go to another lender for assistance.

46.     Defendants knew their clients trusted them and believed they would administer the PPP as required, but chose to exploit their clients' trust.  As a result of Defendants' greed and focus on their own financial incentives, countless small businesses were prevented from benefitting from the program designed to help them survive during the COVID-19 pandemic.

**DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS VIOLATED CALIFORNIA LAW**

47.     Defendants violated California law by engaging in fraudulent, unfair and unlawful business practices.

48.     Defendants wrongfully and unfairly chose to put their financial interests before Plaintiff and the Class Members despite agreeing to comply with all rules, regulations and requirements issued concerning PPP loans.

49.     Furthermore, the statements provided by and/or made by Defendants to Plaintiffs and the Class Members did not disclose Defendants' practice or policy that larger businesses PPP loan applications should take priority.

**PLAINTIFF'S RELIANCE WAS**
**REASONABLE AND FORESEEN BY DEFENDANTS**

50.     Defendants knew the vital importance of the PPP loans to Plaintiff and the Class Members. Defendants also knew for many these loans were required to ensure the viability of these businesses going forward.

51.     When deciding to submit a PPP loan application, Plaintiff reasonably relied on Defendants' material misrepresentations and omissions.

52.     A reasonable consumer would consider if a lender was not going to follow the "first come, first serve" guideline in deciding what bank to submit a PPP loan application through.

**CLASS ACTION ALLEGATIONS**

53.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Rule 23:

> All eligible persons or entities in the State of California who applied for a loan under the PPP with Defendants and whose applications were not processed by Defendants in accordance with SBA regulations and requirements or California law.

54.     Excluded from the proposed class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

55.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

56.     The members in the proposed class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court.

57.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

      (a) Whether Defendants violated the regulations for administering, processing, and handling loans through the PPP;

      (b) Whether Defendants made false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and handling of the applications for loans from small businesses through the PPP;

      (c) Whether Defendants failed to adhere to the administer, process, and handle loans on a "first come, first served" basis as required by the PPP;

      (d) Whether Defendants administered, processed, and handled larger loans before smaller loans;

      (e) Whether Defendants violated various California laws;

      (f) Whether Defendants engaged in false advertising;

      (g) Whether Defendants fraudulently concealed material facts from their clients;

      (h) Whether Defendants' conduct was negligent per se;

      (i) Whether Defendants breached a fiduciary duty;

      (j) Whether Plaintiff and members of the Class are entitled to statutory and punitive damages; and

      (k) Whether Plaintiff and the members of the Class are entitled to declaratory and injunctive relief.

58.     Defendants engaged in a course of common conduct that gave rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.  Identical statutory violations and business practices and

harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

59.     Plaintiff's claims are typical of those of the members of the Class because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

60.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

61.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

62.     Questions of law and fact common to the Class predominate over any questions affecting only individual members of a Class.

63.     As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I

**Violation of California's False Advertising Law, California Business & Professions Code §§17500, *Et Seq*., Against Defendants on Behalf of the Class**

64.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65.     California's False Advertising Law ("FAL") prohibits the performance of services, professional or otherwise "which [are] untrue or misleading." Cal. Bus. & Prof. Code §17500.

66.     As set forth herein, Defendants' misrepresentations and omissions that they were working tirelessly to administer, process, and handle loan applications through the PPP in order to provide assistance to as many clients as possible and that

they were otherwise following the requirements of the PPP was literally false, misleading, and likely to deceive the public.

67.    Defendants knew or reasonably should have known that all these claims were untrue or misleading.

68.    Plaintiff and the Class members are entitled to statutory, injunctive, and equitable relief in the amount of money in their respective PPP loan application.

**COUNT II**

**Violation of California's Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq*., Against Defendants on Behalf of the Class**

69.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

70.    The Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

71.    Defendants' misrepresentations and related omissions that they were working tirelessly to administer, process, and handle loan applications through the PPP in order to provide assistance to as many clients as possible and that they were otherwise following the requirements of the PPP are literally false, misleading, and likely to deceive the public.

**Unlawful**

72.    As alleged herein, Defendants have advertised and represented their administration of loans through the PPP, such that Defendants' actions as alleged herein violate at least the following law:

(a)  The False Advertising Law, California Business & Professions Code §§17500, *et seq*. (the "FAL").

**Unfair**

73.    Defendants' conduct with respect to the administration, processing, and handling of the applications from small businesses for loans through the PPP was

- 13 -

unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to their clients. The utility of their conduct, if any, does not outweigh the gravity of harm to their victims.

74. Defendants' conduct with respect to the administration, processing, and handling of the applications from small businesses for loans through the PPP was also unfair because in order to maximize its financial gain associated with loans through the PPP, it prioritized larger loans over smaller ones while deceiving and misleading small business owners into believing their loans were processed on a "first come, first served" basis, as dictated by the PPP.

75. In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to discharge the funds they received from the PPP to Plaintiff and the Class members.

## COUNT III
### Fraudulent Concealment Against Defendants on Behalf of the Class

76. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77. Defendants fraudulently concealed material facts they had a legal duty to disclose to Plaintiff and the Class members regarding their administration, processing, and handling of the loans through the PPP. These material facts known by Defendants were:

        (a) The order of how applications for loans through the PPP would actually be processed and granted;

        (b) That the processing and granting of larger loans would be given priority over smaller loans or loans where there was greater exposure to the bank over loans where there was less exposure; and

(c) The applications for loans through the PPP would not be processed or granted in accordance with the PPP.

78.     Defendants intentionally and knowingly omitted this information to induce Plaintiff and the Class members to submit applications for loans through the PPP with them.

79.     Defendants knew the concealment or nondisclosure of these facts regarding the true nature of how the PPP loan applications were going to be administered, processed, and handled were material to their clients because they contradicted the representations made by Defendants in their statements and marketing.

80.     Defendants had a legal duty to disclose this information because Defendants knew the representations made in their statements and marketing created a false impression unless these omitted material facts were disclosed to Plaintiff and the Class members, especially as the Government was stating it would be done on a first come, first serve bases.

81.     Plaintiff and the Class members had no knowledge of the true nature of how the PPP loan applications were going to be administered, processed, and handled based on Defendants' fraudulent concealment and nondisclosures, and they had no ability to discover the omitted information prior to submitting their loan applications.  Given the deceptive manner in which Defendants chose to omit or not disclose material information concerning the true nature of how they were administering, processing, and handling PPP loan applications, Plaintiff and the Class members were injured.

82.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members suffered actual damages in that they submitted applications for loans through the PPP with Defendants and because they could only apply for such loans once, were prevented from seeking assistance from another lender.

83.     Plaintiff and the Class members seek injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## COUNT IV
### Breach of Fiduciary Duty Against Defendants on Behalf of the Class

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     The Defendants owed and owe Plaintiff and the Class members fiduciary obligations as there was no arms-length transaction. Defendants failed to provide Plaintiff and the Class with sufficient information that would disclose Defendants practice or policy to not follow the SBA regulations and requirements for PPP loans.

86.     By reason of their fiduciary relationships, the Defendants owed and owe Plaintiff and the Class members the highest obligation of good faith, fair dealing, loyalty, and due care.

87.     The Defendants violated and breached their fiduciary duties to Plaintiff and the Class members.

88.     Defendants' made false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and handling of the applications for loans from small businesses through the PPP.

89.     Additionally, Defendants unjustly profited from the administration, processing, and handling of loans through the PPP as they received origination fees based on the loan amounts.  Consequently, as alleged herein, Defendants prioritized larger loans- and thus larger fees- over smaller loans.

90.     As a direct and proximate result of the Defendants' breaches of their fiduciary obligations, Plaintiff and the Class members have sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, Defendants are liable to Plaintiff and the Class members.

91.     Plaintiff and the Class members seek declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## COUNT V
### Negligence Against Defendants on Behalf of the Class

92.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

93.     Defendants' conduct is negligent per se.

94.     As set forth above and below, Defendants violated their statutory duties under numerous statutes, including the FAL and UCL.

95.     Additionally, Defendants breached duties set forth in SBA regulations, including ethical requirements set forth in 13 CFR Part 120.140: (a) "[no] real or apparent conflict of interest with a small business with which it is dealing;…(f) "engag[ing] in conduct reflecting a lack of business integrity or honesty;…(j)(1) [not disclosing] that a loan will reduce the exposure of a [bank]; or (l) engag[ing] in any activity which taints its objective judgment in evaluating the loan."

96.     Defendants' violations of such statutes and regulations is negligence per se and was a substantial factor in the harm suffered by Plaintiff and the Class members, including their submission of applications for loans through the PPP with Defendants who violated the "first come, first served" basis for processing loan applications, as dictated by the PPP, when they processed larger loans ahead of smaller loans.

97.     As set forth above, such laws were intended to ensure that a company's claims about its services are truthful and accurate and that they engaged in business in an ethically and honest manner.

98.     By virtue of Defendants' negligence, Plaintiff and the Class members have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of all others similarly situated, respectively requests relief against Defendants as set forth below:

A.     Certifying the proposed Class; appointing Plaintiff as Class representative; and its undersigned counsel as Class counsel;

B.     An order requiring Defendants to bear the costs of class notice;

C.     An order enjoining Defendants from administering, processing, or handling loans through the PPP inconsistent with or in violation of the PPP;

D.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as alleged herein, and injunctive relief to remedy Defendants' past conduct;

E.     An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

F.     An order requiring Defendants to pay punitive damages on any count so allowable;

G.     An order requiring Defendants to pay all statutory damages permitted under the counts alleged herein;

H.     An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class members; and

I.     An order providing for all other such equitable relief as may be just and proper.


Dated: April 22, 2020                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.

                                         By:  s/ Rebecca A. Peterson
                                         REBECCA A. PETERSON(241858)
                                         ROBERT K. SHELQUIST
                                         100 Washington Avenue South, Suite 2200
                                         Minneapolis, MN 55401
                                         Telephone: (612) 339-6900
                                         Facsimile: (612) 339-0981
                                         E-mail: rkshelquist@locklaw.com
                                                   rapeterson@locklaw.com

                                         Benjamin Galdston (211114)
                                         BERGER MONTAGUE PC
                                         12544 High Bluff Drive, Suite 340
                                         San Diego, CA 92130
                                         Telephone: (619) 489-0300
                                         E-mail: bgaldston@bm.net

                                         Gregory F. Coleman
                                         GREG COLEMAN LAW PC
                                         First Tennessee Plaza
                                         800 South Gay Street, Suite 100
                                         Knoxville, TN 37929
                                         Telephone: (865) 247-0080
                                         E-mail: greg@gregcolemanlaw.com

Alex R. Straus (SBN 321366)
GREG COLEMAN LAW PC
16748 McCormick Street
Los Angeles, CA 91436
Telephone: (310) 450-9689
E-mail:  alex@gregcolemanlaw.com

Daniel K. Bryson
Scott C. Harris
Patrick M. Wallace
WHITFIELD BRYSON LLP
900 West Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
E-mail: dan@whitfieldbryson.com
          scott@whitfieldbryson.com
          pat@whitfieldbryson.com

**Attorneys for Plaintiff**