UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYDE-EDWARDS SALON & SPA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>JP MORGAN CHASE & CO and JPMORGAN CHASE BANK, N.A.,<br><br>Defendants. | Case No.: 20cv762 DMS(MDD)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION PENDING ARBITRATION** |

This case comes before the Court on Defendants' motion to compel arbitration and to stay the action pending arbitration. Plaintiff filed an opposition and Defendants filed a reply. For the following reasons, the Court grants the motion.

## I.

## BACKGROUND

Plaintiff Hyde-Edwards Salon and Spa is a customer of Defendants JP Morgan Chase & Co. and JP Morgan Chase Bank, N.A. (Compl. ¶39.) On approximately March

17, 2020, Plaintiff's business closed in accordance with San Diego County's Shelter in Place Order issued in response to the COVID-19 pandemic. (*Id.* ¶38.)

After Plaintiff's business closed, the federal government enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was meant to provide $376 billion in economic assistance to small businesses. (*Id.* ¶18.) As part of the CARES Act, the Government established a federal Paycheck Protection Program ("PPP"), which "was designed to help small business owners cover the costs associated with retaining their employees during the COVID-19 pandemic by providing 100% federally guaranteed loans." (*Id.* ¶21.)

On approximately April 8, 2020, Plaintiff applied for loan assistance through the PPP with Defendants. (*Id.* ¶39.) On April 19, 2020, Plaintiff received an email stating "its application was in Stage 2 of the review process, but that PPP funds were no longer available." (*Id.* ¶41.) Plaintiff alleges it has received no further communication from Defendants about the status of its loan application. (*Id.*)

On April 22, 2020, Plaintiff filed the present case. In the Complaint, Plaintiff alleges Defendants made "false, misleading, and deceptive representations and omissions concerning their processing of economic assistance via the [PPP], by engaging in conduct prohibited by law and regulations with customers and clients, and by otherwise engaging in sharp business practices." (*Id.* ¶1.) Specifically, Plaintiff alleges the PPP guidelines stated that loans should be processed on a "first come, first served" basis, but Defendants ignored those guidelines. (*Id.* ¶3.) Instead, Defendants:

> prioritized the processing of large loans over smaller loans and loans for which Defendants risked greater exposure in the event of a business failure over loans where the risk exposure was less. For instance, Defendants prioritized processing the loans for large restaurant chains such as Ruth's Chris Steakhouse (approved $20 million on April 7), Shake Shack ($10 million), Potbelly Sandwich Shop (approved $10 million on April 6), and Texas Taco Cabana (approved $10 million on April 8).

(*Id.*)  Plaintiff alleges Defendant misled and deceived it "into believing applications for loans through the PPP were processed in the order received with no regard to loan amount, when in fact the loan amount certainly influenced the order in which loans were processed and approved." (*Id.* ¶44.)  Plaintiff alleges it would have submitted its application through another lender had it known of Defendants' actual practices.  (*Id.* ¶45.)

Based on these allegations, Plaintiff brings five claims against Defendants on behalf of itself and the following class:  "All eligible persons or entities in the State of California who applied for a loan under the PPP with Defendants and whose applications were not processed by Defendants in accordance with SBA regulations and requirements or California law."  (*Id.* ¶53.)   The claims allege:  (1) violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, (2) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, (3) fraudulent concealment, (4) breach of fiduciary duty, and (5) negligence.  In response to the Complaint, Defendants filed the present motion.

## II.

## DISCUSSION

Defendants move to compel arbitration of Plaintiff's claims pursuant to Plaintiff's Deposit Account Agreement ("DAA") with Chase and Chase's Online Services Agreement ("Online Agreement"), both of which include an arbitration provision.  Plaintiff does not dispute that it signed these Agreements, but argues they do not apply to the claims alleged in this case.  The parties also dispute whether these Agreements delegate arbitrability to the arbitrator.

The FAA governs the enforcement of arbitration agreements involving interstate commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013).  "The overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  "The FAA 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original).

Consistent with these principles, the Court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

Here, Plaintiff does not dispute that it agreed to the DAA and the Online Agreement, both of which include an arbitration provision. (*See* Decl. of Laura Deck in Supp. of Mot. ("Deck Decl."), Ex. 5, ECF No. 17-1 at 142-42 ("DAA"); Decl. of Nicholas Sergi in Supp. of Mot. ("Sergi Decl."), Ex. 10, ECF No. 17-3 at 38-39 ("Online Agreement").) Thus, there appears to be a valid agreement to arbitrate.

The real dispute here is whether these agreements cover the claims alleged in this case. Defendants argue they do, or at a minimum, that this issue should be decided by the arbitrator. In support of the latter argument, Defendants cite the plain language of the Online Agreement, and the reference in both the Online Agreement and the DAA to both JAMS and the American Arbitration Association ("AAA"). Plaintiff disagrees that either of these references evidences a clear and unmistakable delegation of arbitrability to the arbitrator. The Court agrees with Defendants.

The Online Agreement states:

> This binding arbitration provision applies to any and all Claims that you have against us, our parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and against all of their respective employees, agents, or assigns, or that we have against you; *it also includes any and all Claims regarding the applicability of this arbitration clause or the validity of the Agreement, in whole or in part*.

(Sergi. Decl., Ex. 9, ECF No. 17-3 at 38) (emphasis added).  The Ninth Circuit has found this kind of language evidences a clear and unmistakable agreement between the parties "to arbitrate the question of arbitrability."  *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011).  District courts, including this one, have also reached the same conclusion when considering language similar to the language at issue here.  *See Robbins v. Checkr, Inc.*, No. 19-cv-05717-JST, 2020 WL 4435139, at *3-4 (N.D. Cal. July 30, 2020) (finding clause delegating disagreements about applicability and validity of arbitration agreement evidenced clear and unmistakable agreement to delegate question of arbitrability to arbitrator); *Cote v. Barclays Bank Delaware*, No. 14cv2370-GPC-JMA, 2015 WL 251217, at *2-3 (S.D. Cal. Jan. 20, 2015) (same).

Plaintiff attempts to avoid this conclusion by arguing that the delegation clause applies only to "Claims," which the arbitration provision defines as "any dispute, claim or controversy arising now or in the future under or relating in any way to this agreement, or to the online service[.]"  (Sergi Decl., Ex. 11, ECF No. 17-3 at 87.)  Plaintiff argues the claims alleged in this case do not fall within the Agreement's definition of "Claims" because they involve loan-related claims, in particular, loans "for a federally funded program that is not part of any Chase software or app."  (Opp'n at 13.)  But this is just another way of saying that the claims at issue here do not fall within the scope of the arbitration clause.  It does not address the threshold issue of whether the Court or the arbitrator should decide the scope of the arbitration clause.  Given the plain language of the Online Agreement and the case law set out above, the answer to that threshold issue is clear:  Questions about the scope of the arbitration clause are for the arbitrator, not the Court.[1]  Accordingly, the Court grants Defendants' motion to compel arbitration.

---

[1] In light of this finding, the Court declines to address Defendants' argument that the reference to JAMS and AAA constitutes clear and unmistakable evidence of delegation of arbitrability to the arbitrator.  Even if the Court were to address that issue, however, the outcome would likely be the same.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th

# III.

# CONCLUSION AND ORDER

Because the parties do not dispute that there is a valid agreement to arbitrate, and because the Online Agreement delegates questions of arbitrability to the arbitrator, the Court grants Defendants' motion to compel and stays this case pending the parties' arbitration. Pursuant to Defendants' request, this case is stayed to permit the arbitrator to decide the questions of arbitrability, and then, if permissible to arbitrate the substantive claims. Within 14 days of the completion of the arbitration proceedings, the parties shall submit a joint report to the Court advising of the outcome of the arbitration, and request to dismiss the case or vacate the stay.

**IT IS SO ORDERED**.

Dated:  November 23, 2020

Hon. Dana M. Sabraw
United States District Judge

---

Cir. 2015) ("[I]ncorporation of the AAA Rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.")